UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MURRAY FISHER, | ) | CASE NO.  1:21-cv-829 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| AIRGAS USA, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the Court is a motion for summary judgment filed by Defendants Airgas USA,
LLC and Airgas, Inc. (collectively "Airgas").  (Doc. No. 46.)  Plaintiff Murray Fisher opposed
this motion (Doc. No. 49), and Airgas filed a reply brief in support (Doc. No. 53).  Also before
the Court are Airgas' partial motion to dismiss (Doc. No. 37) and Plaintiff's motion to strike
(Doc. No. 48).

For the reasons that follow, the motion for summary judgment (Doc. No. 46) is
GRANTED, Airgas' partial motion to dismiss (Doc. No. 37) is DENIED as moot, and Plaintiff's
motion to strike (Doc. No. 48) is DENIED.

I. **Background**

A. **Undisputed Facts**

Plaintiff is a resident of Ohio, and Airgas is headquartered in Pennsylvania.  (Doc. No.
29-1 at PageID 155.)

1. **Plaintiff's Employment at Airgas**

Airgas hired Plaintiff as a Technician in October 2019.  (Plaintiff's Dep., Doc. No. 46-2
at PageID 310.)  Plaintiff's direct supervisor at Airgas was Kristopher Majors, who held the title

1

of Operations Manager.  (*Id.* at PageID 311; *see also* Technician Job Description, Doc. No. 46-3 at PageID 342.)  Plaintiff's duties included interacting with combustible gasses and operating power tools and machinery, including saws and drills.  (Doc. No. 46-2 at PageID 316, 337-38.)  Airgas also required Plaintiff to operate motor vehicles during working hours.  (*Id.* at PageID 338.)

Airgas employees were subject to a drug testing program.  (Employee Handbook, Doc. No. 46-5 at PageID 367-68.)  This program required potential employees to undergo a preliminary drug test.  (Doc. No. 46-2 at PageID 314-15.)  Employees were then selected for random drug tests.  (Doc. No. 46-5 at PageID 367.)  Airgas contracted with HireRight – an independent third-party vendor – to implement its drug testing program.  (Lowery Aff., Doc. No. 46-1 at PageID 306.)  In doing so, HireRight randomly selected employees for drug testing, administered the drug test, and then sent the results back to Airgas.  (*Id.*; *see also* Doc. No. 46-2 at PageID 315, 320-21.)  The Airgas employee handbook informed employees that violating the company's drug policies "may result in immediate termination."  (Doc. No. 46-5 at PageID 374.)  In practice, when an employee tested positive for a prohibited substance, Airgas would agree to retest the employee's specimen once.  (Lowery Dep., Doc. No. 49-2 at PageID 542-43.)  If the retest also came back positive, Airgas would terminate the employee.  (*Id.*)  The employee handbook explicitly stated that marijuana was a prohibited substance at Airgas.  (Doc. No. 46-5 at PageID 368.)

As an Airgas employee, Plaintiff was subject to the drug testing program and was aware that use of a prohibited substance may result in immediate termination.  (Plaintiff's Affirmation of Airgas Policies, Doc. No. 46-4 at PageID 345.)  Before he attended orientation, Airgas

required Plaintiff to take a drug test.  (Doc. No. 46-2 at PageID 314.)  The results of this test indicated that Plaintiff had not taken a substance prohibited by Airgas.  (*See id.*)

### 2.  Plaintiff's Cancer Diagnosis and Medical Leave

In November 2019, Plaintiff was diagnosed with liver cancer.  (*Id.* at PageID 319.) Plaintiff informed his supervisor, Mr. Majors, of this diagnosis.  (*Id.*)  In August 2020, Plaintiff requested two disability accommodations: medical leave and time off to attend doctors' appointments.  (*Id.* at PageID 333, 336.)  Airgas granted these requests.  (*Id.*)  Plaintiff underwent surgery on August 12, 2020, and Airgas granted Plaintiff leave until October 7, 2020, to recover.  (ADA Accommodation Letter, Doc. No. 46-6 at PageID 416; Doc. No. 46-2 at PageID 333.)

Plaintiff returned to work on October 15, 2020.  (Doc. No. 46-2 at PageID 334.)  He was tasked with the same duties he performed prior to his leave.  (*Id.*)

On October 24, 2020, Plaintiff began to use a legal hemp product called Free Hemp.  (*Id.* at PageID 322-23.)  Plaintiff decided to take Free Hemp after receiving recommendations from peers and researching the product's potential benefits.  (*Id.* at PageID 324-25, 327-28.)  Based on these representations, he determined that the product would alleviate cancer-related pain.  (*Id.* at PageID 327.)  To accomplish this, he ingested more than half a teaspoon of Free Hemp daily. (*Id.* at PageID 326.)  Hemp was not illegal, nor did Airgas prohibit its use.  (*See* Doc. No. 46-5 at PageID 367-68.)  *See* 7 U.S.C. § 1639*o*; 21 U.S.C. § 802; Ohio Rev. Code § 928.01. ‼

### 3.  Plaintiff's Termination

In November 2020, Mr. Majors was notified that Plaintiff was randomly selected for a drug test.  (Notice of Drug Test Email, Doc. No. 46-7 at PageID 420.)  Plaintiff took the drug test, and the results represented that his specimen was positive for marijuana.  (Doc. No. 46-2 at

PageID 330-31; Doc. No. 49-2 at PageID 514.)  Soon after being notified of the results, Plaintiff communicated to William Lowery, a Human Resources Director at Airgas, and George Zoret, HireRight's Medical Review Officer, that he was using a legal hemp product, which caused him to test positive for marijuana.  (Plaintiff's Emails to Lowery, Doc. No. 49-5 at PageID 691; Plaintiff's Emails to Zoret, Doc. No. 49-5 at PageID 684-85.)  Plaintiff did not inform Airgas of his use of Free Hemp prior to being selected for the November 2020 drug test.  (Doc. No. 46-2 at PageID 323.)

Plaintiff requested that his specimen be retested, which Airgas granted.  (Doc. No. 46-2 at PageID 331; Doc. No. 46-5 at PageID 690.)  Airgas also agreed to delay Plaintiff's termination until the retest was complete.  (Doc. No. 46-2 at PageID 331; Doc. No. 49-5 at PageID 691-92.)  The second test represented that Plaintiff had used marijuana.  (Doc. No. 46-2 at PageID 331.)

Airgas formally terminated Plaintiff on December 9, 2020.[1]  (Doc. No. 29-1 at PageID 158.)  Airgas informed Plaintiff that the reason for his termination was his positive drug test.  (*Id.*)  On December 15, 2020, Plaintiff emailed Mr. Lowery a request for reinstatement.  (Plaintiff Reinstatement Email, Doc. No. 46-9 at PageID 428.)  Plaintiff reiterated that he only used legal hemp products – never marijuana – which did not violate Airgas' drug policies.  (*Id.* at PageID 427-28; *see also* Plaintiff Aff., Doc. No. 49-1 at PageID 479.)  HireRight's Chief Medical Officer and Managing Director of Transportation – Dr. Todd Simo – reviewed

---

[1] The Court finds that the record citations provided by both parties do not establish which Airgas employee decided to terminate Plaintiff.  Throughout his opposition brief, Plaintiff claims that Mr. Lowery made the termination decision.  (*E.g.*, Doc. No. 49 at PageID 463.)  Although Mr. Lowery testified that he *recommended* that Plaintiff should be terminated, Mr. Lowery also stated that he did not know who ultimately *made* the decision.  (Doc. No. 49-2 at PageID 513-14.)  Mr. Majors also testified that he did not know who decided to terminate Plaintiff after being asked whether it was Mr. Lowery.  (Doc. No. 49-6 at PageID 704.)  There is a genuine issue of fact about who terminated Plaintiff.  Despite Plaintiff's contentions, this dispute is immaterial.

Plaintiff's drug test results and stated that the positive marijuana result could not be explained by Plaintiff's use of a legal hemp product.   (Dr. Simo Aff., Doc. No. 46-10 at PageID 431.)  Sherrie Shiflett – the Vice President of Human Resources at Airgas – responded to Plaintiff's reinstatement email by stating that Airgas had consulted with Dr. Simo who confirmed that the drug test was not caused by legal hemp.[2]  (Doc. No. 46-9 at PageID 426-27.)  Ms. Shiflett reiterated Airgas' decision to terminate Plaintiff via email on December 21, 2020.  (*Id.* at PageID 427.)

Prior to his termination, Plaintiff aptly performed his job duties at Airgas.  (Majors Dep., Doc. No. 49-6 at PageID 703-04.)  Mr. Majors recommended that Plaintiff not be terminated.  (*Id.* at PageID 705.)

### B.  Procedural Background

On March 18, 2021, Plaintiff initiated this action against Airgas and Mr. Majors in the Cuyahoga County, Ohio Court of Common Pleas.  (Doc. No. 1-1.)  On April 20, 2021, Defendants removed the case to this Court because complete diversity existed between the parties, and the amount in controversy exceeded $75,000.00.  (Doc. No. 1.)  On June 9, 2021, the Court dismissed all claims against Mr. Majors without prejudice.  (Doc. No. 10.)  On May 2, 2022, the Court granted Plaintiff's motion for leave to file first amended complaint.  (Doc. No. 35.)  The amended complaint contains four counts: failure-to-accommodate, disability discrimination, wrongful termination in violation of Ohio public policy, and Ohio law "duty to

---

[2] The Court agrees with Plaintiff that there is an inconsistency between Ms. Shiflett's email to Plaintiff (which indicates that HireRight informed Airgas that the drug tests were accurate because Plaintiff's "THC" levels were too high to be a result of legal hemp use) and Dr. Simo's affidavit (which states his opinion that the test was accurate because Plaintiff's "THCA" levels were too high).  (*Compare* Doc. No. 46-9 at PageID 426-27 *with* Doc. No. 46-10 at PageID 431.)  Regardless, it is undisputed that the lab results indicated Plaintiff's specimen was positive for marijuana.

warn." (Doc. No. 29-1.)  On May 16, 2022, Airgas filed a motion to dismiss the duty to warn

claim in Plaintiff's amended complaint (Doc. No. 37), which Plaintiff opposed on June 16, 2022

(Doc. No. 40).  On July 18, 2022, Airgas moved for summary judgment on all four claims in

Plaintiff's amended complaint.  (Doc. No. 49.)

## II. <u>Discussion</u>

### A.  Standard of Review

A motion for summary judgment must be granted "if the movant shows there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed

must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B)

showing that the materials cited do not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

56(c)(1).

In reviewing summary judgment motions, this Court must view the evidence in the light

most favorable to the nonmoving party to determine whether a genuine issue of material fact

exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  A fact is "material" only if its

resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  "The ultimate question is whether the evidence presents a sufficient factual

disagreement to require submission of the case to a jury, or whether the evidence is so one-sided

that the moving parties should prevail as a matter of law." *Payne v. Novartis Pharm. Corp.*, 767

F.3d 526, 630 (6th Cir. 2014) (citing *Anderson*, 447 U.S. at 255.)

"Once the moving party has presented evidence sufficient to support a motion for

summary judgment, the nonmoving party is not entitled to trial merely on the basis of

allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). Put another way, the party opposing the motion for summary judgment must present evidence supporting his claims. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."). Thus, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871 (1990); *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) ("A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant."). Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(2); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

### B. Failure-to-Accommodate

When analyzing disability employment discrimination claims brought under Ohio law, courts look to the Americans with Disability Act (the "ADA") regulations and relevant caselaw for guidance. *E.g.*, *Knapp v. City of Columbus*, 192 F. App'x 323, 328 (6th Cir. 2006) ("[O]ur federal analysis can parallel that of Plaintiff's claims under Erie and Ohio law."); *Johnson v. Univ. Hosps. Physician Servs.*, 617 F. App'x 487, 490 n.2 (6th Cir. 2015) ("We analyze the ADA and Ohio state-law claims together because, in disability discrimination cases, Ohio courts look to federal regulations and cases interpreting the ADA for guidance in interpreting Ohio law.").

To bring a failure-to-accommodate disability discrimination claim, the plaintiff must proceed through the direct-evidence framework.  *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020).  To start, the plaintiff bears the burden of establishing that he is disabled.  *Id.*  Next, the plaintiff must show that he is "otherwise qualified" for the position despite his disability: "(a) without accommodation from the employer, (b) with an alleged "essential job" requirement eliminated; or (c) with a proposed reasonable accommodation."  *Id.* (quotations and citations omitted).  The employer then bears the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.  *Id.*  "Plaintiffs must also propose a reasonable accommodation to succeed."  *Id.* at 812.

The Court's analysis begins and ends with whether Plaintiff met his burden of proposing a reasonable accommodation.  In his opposition brief, Plaintiff claimed he proposed reasonable accommodations by asking for an investigation into his drug test results and requesting to be reinstated.  (Doc. No. 49 at PageID 472.)  No reasonable jury could find that these accommodations are reasonable for two reasons.

*First*, Plaintiff has not provided any evidence establishing that his proposals were "necessary" to address any work-related limitations caused by his disability.  *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 557 (6th Cir. 2008).  The Sixth Circuit has affirmed grants of summary judgment numerous times based on similar evidentiary defects.  In *Nance*, the court found summary judgment was appropriate because the plaintiff could not show that her shoulder and neck injuries required her to have a safety bar and additional lighting to perform her role.  *Id.* at 543, 557.  Similarly, in *Jakubowski*, the court affirmed summary judgment because the employee's proposed accommodation did not alleviate his inability to perform a medical

8

worker's essential role of communicating and interacting with patients.  *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010). Most recently, the *Tchankpa* court determined that no reasonable jury could find the employee's request to work from home was reasonable because the employee failed to provide medical documentation stating that his accommodation request to work from home was necessary for him to work.  951 F.3d at 809, 814.

Based on the holdings of these cases, a sister court recently granted summary judgment on a failure-to-accommodate claim premised on substantially similar undisputed facts.  In *Hamric*, the plaintiff employee started ingesting legal CBD to treat her anxiety and bipolar disorder symptoms upon a recommendation from a co-worker.  *Hamric v. City of Murfreesboro*, No. 3:18-cv-01239, 2020 WL 5424104, at *1 (M.D. Tenn. Sept. 10, 2020).  The employer drug tested the employee, and the results indicated that she had used marijuana.  *Id.* at *2. Afterwards, the employee informed the employer that she ingested CBD, not marijuana.  *Id.*  The employer verified the results with the drug testing company's medical review officer and confirmed its decision to proceed with termination.  *Id.*  After the HR Director stated that she would recommend her termination, the employee resigned and requested that the employer revisit its drug policy to accommodate the use of legal CBD.  *Id.*  The court determined that, as a matter of law, this accommodation request was unreasonable because the employee did "not point to any evidence to show that her requested accommodation was necessary to 'address a key obstacle preventing her from performing a necessary function of her job.'"  *Id.* at *5 (citing *Tchankpa*, 951 F.3d at 812 (brackets omitted)).

Similarly, Plaintiff's accommodation requests amounted to him asking Airgas to accommodate his use of hemp.  And, like the *Hamric* employee, Plaintiff has not shown that his hemp use was necessary to treat a limitation caused by his disability.  Aside from his testimony

that he researched and believed that this product would alleviate cancer-related pain (Doc. No.
46-2 PageID 324-25, 327-28; Doc. No. 49-1 at PageID 479), there is nothing in the record
establishing his cancer necessitated his ingestion of hemp to perform his duties at Airgas.
Notably, the record does not contain testimony from a doctor establishing that this product
reduced any cancer-related pain – let alone that it was "necessary" to do so.  *See Tchankpa*, 951
F.3d at 814.  In fact, in his deposition and affidavit, Plaintiff did not even contend that his hemp
use had any impact on him at all.  Instead, he merely stated that his research led him to believe
the product *would* help.  (*See* Doc. No. 46-2 PageID 324-25, 327-28; Doc. No. 49-1 at PageID
479.)  Because of this, Plaintiff has failed to show that he proposed a reasonable accommodation.
*See Hamric*, 2020 WL 5424104, at *5.

  *Second*, Plaintiff's accommodation requests, which he made after he tested positive for a
substance prohibited by Airgas, cannot form the basis of a failure-to-accommodate claim as a
matter of law.  *See Hrdlicka v. Gen. Motors, LLC*, 59 F.4th 791, 807 (6th Cir. 2023) ("When an
employee requests an accommodation for the first time only after it becomes clear that an
adverse employment action is imminent, such a request can be 'too little, too late'" (quoting
*Parsons v. Auto Club Grp.*, 565 F. App'x 446, 449 (6th Cir. 2014))); *Lockhart v. Marietta City
Sch.*, No. 20-4308, 2021 WL 4810172, at *11 (6th Cir. Oct. 15, 2021) ("Once [the plaintiff]
engaged in misconduct warranting termination, the [defendant] was allowed to proceed with
disciplinary hearings and take the steps necessary to finalize her termination."); *Yarberry v.
Gregg Appliances, Inc.*, 625 F. App'x 729, 741-42 (6th Cir. 2015) (accepting the defendant's
argument that the plaintiff "could not rely on his disability and request accommodation after
engaging in terminable misconduct").

Accommodation requests made after an employee violates an employer's policy fail because an employer's duty to accommodate is only a "prospective" duty.  *E.E.O.C. Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, at No. 36.  Thus, "[a]n employer never has to excuse a violation of a uniformly applied conduct rule that is job-related and consistent with business necessity."  *Id.* at No. 35; *see also E.E.O.C. Enforcement Guidance: The Americans with Disabilities Act: Applying Performance and Conduct Standards to Employees with Disabilities*, 2008 WL 4786697, at *12 ("If an employee states that her disability is the cause of the conduct problem or requests accommodation, the employer may still discipline the employee for the misconduct.  If the appropriate disciplinary action is termination, the ADA would not require further discussion about the employee's disability or request for reasonable accommodation.").

Here, it is undisputed that Plaintiff's accommodation requests came after he tested positive for marijuana.  (Doc. No. 46-2 at PageID 323; Doc. No. 46-9 at PageID 428.)  The requests were, therefore, for Airgas to retroactively amend its practice of terminating employees who test positive for prohibited substances.  (Doc. No. 46-5 at PageID 368, 374; Doc. No. 46-1 at PageID 306; Doc. No. 49-2 at PageID 543.)  Such requests cannot form the basis of a failure-to-accommodate claim; they are "too little, too late."  *Hrdlicka*, 59 F.4th at 807.

Accordingly, Plaintiff's failure-to-accommodate claim is dismissed.

### C.  Disability Discrimination

Plaintiff also claimed that Airgas violated Ohio law by terminating him because of his disability.  (Doc. No. 29-1 at PageID 160.)  However, he provided no direct evidence that this decision was motivated by his disability.  Thus, he must prove his claim under the *McDonnell Douglas* burden-shifting analysis.  *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011).

*McDonnell Douglas*, in the disability discrimination context, first places the burden on the plaintiff to make out a *prima facie* case of discrimination: (1) the plaintiff was disabled, (2) the plaintiff was otherwise qualified to perform the essential functions of his job, (3) the defendant knew of the plaintiff's disability, (4) the defendant took an adverse action against the plaintiff, and (5) the plaintiff's position remained open or a non-disabled person replaced the plaintiff. *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012). If the plaintiff can make out this *prima facie* case, the defendant must show that it had a legitimate, nondiscriminatory reason for the adverse action. *Whitfield*, 639 F.3d at 259. If the defendant meets this burden, the burden shifts back to the plaintiff to show that the proffered reason was a pretext for discrimination. *Id.* However, throughout this process, the burden of persuasion remains with the plaintiff to prove that the defendant intentionally discriminated against him because of his disability. *See* Ohio Rev. Code § 4112.02(A); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). In other words – unlike his failure-to-accommodate claim – Plaintiff must provide evidence from which a jury could reasonably conclude that Airgas had discriminatory intent in deciding to terminate his employment. *E.g.*, *Punt v. Kelly Servs.*, 862 F.3d 1040, 1048 (10th Cir. 2017).

Airgas asserted that Plaintiff cannot meet his burden at the *prima facie* and pretext stages of *McDonell Douglas*. (Doc. No. 46 at PageID 287-92.) Unsurprisingly, Plaintiff disagreed, arguing that he has shown there to be genuine disputes of material fact as to both burdens. (Doc. No. 49 at PageID 467-72.) Having evaluated all arguments, the Court finds that this claim is clearly resolved at the pretext stage. Thus, the Court assumes – without deciding – that Plaintiff has met his burden of establishing a *prima facie* case of disability discrimination. *See Trahan v. Wayfair Maine, LLC*, 957 F.3d 54, 61 (1st Cir. 2020) (assuming that the plaintiff met his burden

12

of establishing a *prima facie* case of discrimination to resolve the case at the pretext stage). Further, Plaintiff did not offer any specific or valid argument that Airgas did not meet its burden at the second stage of *McDonnell Douglas* by proffering that his positive drug test was a legitimate, nondiscriminatory reason for its termination decision.[3]  *Bailey v. Real Time Staffing Servs., Inc.*, 543 F. App'x 520, 524 (6th Cir. 2013) (holding that a positive drug test is a legitimate, nondiscriminatory reason for termination).

To prove pretext, the employee must introduce admissible evidence showing that the legitimate, nondiscriminatory reason proffered by the employer is untrue and, instead, discriminatory animus was the reason for the decision.  *Myers v. U.S. Cellular Corp.*, 257 F. App'x 947, 954 (6th Cir. 2007).  To carry this burden, the employee can show that the employer's nondiscriminatory reason for the adverse action (1) has no basis in fact, (2) did not actually motivate the employer's actions, or (3) was insufficient to motivate the employer's actions.  *Miles v. South Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020).

 Even if the employee provides evidence casting doubt on the validity of the employer's legitimate, nondiscriminatory reason, the employer can still prevail under the "honest belief rule."  The "honest belief rule . . . precludes a finding of pretext when an employer's nondiscriminatory reason for terminating an employee is later proven false, so long as the employer can show that it honestly believed the reason was true when making the termination decision."  *Boshaw v. Midland Brewing Co.*, 32 F.4th 598, 606 (6th Cir. 2022).  The honest belief rule is relevant at the pretext stage because "if the employer honestly, albeit mistakenly,

---

[3] To be sure, Plaintiff does contest the validity of this reason at the pretext stage, but this is not relevant to determining whether Airgas met its minimal burden of simply proffering a legitimate, nondiscriminatory reason.  *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585-86 (6th Cir. 2009) (noting that the defendant's ability to meet this burden "does not involve a credibility assessment" and "is satisfied if he simply 'explains what he has done.'" (citation omitted)).

believes in the non-discriminatory reason it relied upon in making its employment decision, then the employer arguably lacks the necessary discriminatory intent." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998).

In the ADA context, an employer may prevail at the pretext stage – even if the employee shows that the reason for his adverse employment action was incorrect – if the employer can establish "its reasonable reliance on the particularized facts before it at the time the decision was made." *Id.* at 807.  This burden does not demand the employer to undergo an "optimal" decision-making process. *Id.*  Nor does it require employers to leave "no stone left unturned." *Id.*  "Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.*

Pretext fails because of the honest belief rule.  Plaintiff dedicated much of his opposition brief on attempting to disprove Airgas' legitimate, nondiscriminatory reason, claiming that the results of the drug test were false.  (Doc. No. 49 at PageID 465-68.)  Plaintiff is adamant that he never ingested marijuana.  (*Id.* at PageID 467.)  In response, Airgas contended that Plaintiff has not provided anything beyond conclusory statements casting doubt on the validity of his positive test.  (Doc. No. 53 at PageID 790.)  But, even if the Court assumes the test incorrectly determined that Plaintiff ingested marijuana, the honest belief rule precludes a finding in Plaintiff's favor unless there is evidence suggesting that Airgas knew the test was incorrect or unreasonably relied on the test results. *See Smith*, 155 F.3d at 808.  There is neither.

The closest Plaintiff came to providing evidence casting doubt on Airgas' honest belief defense was his citations to his emails to Mr. Lowery that he sent after Airgas notified him about his positive marijuana test in which he informed Airgas about his use of the Free Hemp product and the potential of a false positive.  (Doc. No. 49 at PageID 465-67.)  After receiving this

14

notice, Plaintiff claimed, Airgas chose to maintain a "policy of ignorance" towards his legal use of hemp.  (*Id.* at PageID 471.)

But this argument ignores the undisputed fact that Airgas did not simply ignore Plaintiff after receiving this information.  Indeed, Airgas delayed its termination determination until HireRight completed the retest of the specimen.  (Doc. No. 46-2 at PageID 331; Doc. No. 49-5 at PageID 691-92.)  HireRight's Chief Medical Officer also reviewed Plaintiff's test results.  (Dr. Simo Aff., Doc. No. 46-10 at PageID 431, ¶¶ 2, 6-7, 10.)  Airgas chose to rely on the tests administered by HireRight.  (Lowery Aff., Doc. No. 46-1 at PageID 306, ¶¶ 6-8.)

Under *Bailey*, Airgas' decision to rely on HireRight's drug test was reasonable and thus established an honest belief.  *See* 543 F. App'x at 524.  Like Airgas, the *Bailey* employer discovered that one of its employees tested positive for marijuana.  *Id.* at 521.  The employee produced a doctor's note indicating that the positive test could have resulted from his medication.  *Id.*  The employer consulted with a medical review officer and terminated the employee for violating its drug policies.  *Id.* at 524.  The Sixth Circuit held that in determining whether "to credit [the plaintiff's] story or to credit the medical review officer's[,] . . . [the employer's] decision to credit the medical review officer's [did] not support an inference of discriminatory animus."  *Id.*  Accordingly, the court upheld the district court's grant of summary judgment for the employer.  *Id.*

Similarly, Plaintiff has not directed this Court to record evidence from which a reasonable jury could conclude that Airgas did not honestly believe that HireRight's drug tests were accurate or that otherwise indicates that the termination decision was motivated by discriminatory animus.  In attempting to do so, however, Plaintiff correctly noted that Airgas cited Ms. Shiflett's unsworn statement in her email to Plaintiff to prove the truth of the matter

asserted, meaning it was cited to show that Airgas consulted with Dr. Simo.  (Doc. No. 49 at PageID 463.)  But even if the Court does not consider this piece of evidence, Plaintiff has not confronted Dr. Simo's declaration stating he reviewed Plaintiff's test (Doc. No. 46-10 at PageID 431) and at his deposition Plaintiff testified that – after his first positive test – Airgas granted him a retest (Doc. No. 46-2 at PageID 331).[4]  This evidence is directly relevant to proving that Airgas did not merely bury its head in the sand but, instead, made a "reasonably informed and considered decision" in choosing to rely on the positive drug test.  *Smith*, 155 F.3d at 806; *see also Bailey*, 543 F. App'x at 524.

The cases cited by Plaintiff also do not support his contention that there is a triable issue at the pretext stage here.  In *Hixon v. Tennessee Valley Auth. Bd. of Directors*, 558 F.Supp.3d 573 (E.D. Tenn. 2021), the district court wrestled with allowing an expert to testify at trial regarding the employer's drug test potentially producing a false positive.  This opinion states that the case advanced past summary judgment because the employee provided evidence that the

---

[4] Although not necessary to consider here, under Fed. R. Civ. P. 56, the Court arguably could have considered Ms. Shiflett's hearsay statement because it could be reduced to an admissible form at trial through live testimony.  *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 423-24 (6th Cir. 2021) ("Unfortunately, the district court misapprehended the requirements of Federal Rule of Civil Procedure 56, which requires a plaintiff's evidence to be admissible only as to its contents and not as to its form, as long as the plaintiff can proffer that it will be produced in an admissible form."); *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) ("The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial.")  Moreover, the Court notes that the content of Ms. Shiflett's statement is supported by Exhibit 1 to Plaintiff's motion to strike.  (Doc. No. 48-1.)  Specifically, in a discovery response signed by Defense counsel, Airgas represented the following: "Defendant discussed Plaintiff's drug test results with Defendant's third-party vendor HireRight's Chief Medical Officer and Managing Director of Transportation, Dr. Todd Simo, M.D."  (*Id.* at PageID 443.)  This representation could also be admissible to support that Airgas consulted with Dr. Simo.  *Nelson v. Truesdell*, No. 320CV00436MMDCSD, 2023 WL 1525453, at *3 n.6 (D. Nev. Feb. 2, 2023) ("[T]he Court could consider Defendant's unverified interrogatory responses, as Defendant could reasonably testify at trial as to the content of his interrogatory responses.").

employer had offered "shifting rationales" for its decision to terminate the plaintiff.  *Hixon*, 558 F.Supp.3d at 579.  The employer argued that the expert's opinion was irrelevant at trial because the jury only had to decide whether it reasonably believed the drug test to be true.  *Id.* at 582. The employee countered that the expert's opinion was relevant to prove that the test was so obviously flawed that the employer could not have reasonably relied upon it.  *Id.*  The court did not resolve this dispute, as the evidence was relevant for other reasons.  *Id.*  Unlike *Hixon*, it is undisputed here that Airgas consistently stated the positive drug test was why it fired Plaintiff. *See id.*  Nor has Plaintiff offered expert testimony establishing that the drug test results were so obviously flawed to form an honest belief.  *See id.*  This procedurally distinct and non-binding case does not alter this Court's analysis.

Plaintiff also cited *Gaglioti v. Levin Grp., Inc.*, 508 F. App'x 476 (6th Cir. 2012) for the proposition that he is not required "to disprove" Airgas' legitimate, nondiscriminatory reason for its adverse employment action.  (Doc. No. 49 at PageID 469.)  Plaintiff is correct that his burden at this stage is not to outright prove or disprove anything.  Rather, as stated in *Gaglioti*, Plaintiff must typically show that it "would be reasonable for a juror not to believe" Airgas' legitimate, nondiscriminatory reason.  *Id.* at 482.  However, *Gaglioti* did not address the employee's burden when the employer introduced evidence establishing that it honestly believed its rationale for the adverse action.  In this scenario, the employee must show that it would be reasonable for a jury to find that the employer did not honestly believe its stated reason, regardless of whether it had a sufficient basis in fact.  *See Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 572 (6th Cir. 2021); *Buckosh v. Bonded Filter Co., LLC*, No. 1:21-cv-0975, 2022 WL 3681793, at *9 (N.D. Ohio Aug. 25, 2022).  As stated above, Plaintiff did not do so.

17

Accordingly, Airgas' motion as it relates to Plaintiff's disability discrimination claim is granted.

### D. Wrongful Termination

Under Ohio law, a claim of wrongful termination in violation of a public policy requires a plaintiff to show that:

1. A clear public policy existed and was manifested in a state or federal constitution, statute, or administrative regulation, or in the common law;

2. in general, dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy;

3. the plaintiff's dismissal was motivated by conduct related to the public policy; and

4. the employer did not have a justifiable legitimate business justification for the dismissal.

*Hiller v. Aver Info., Inc.*, No. 5:20-cv-2244, 2021 WL 3725657, at *3 (N.D. Ohio Aug. 23, 2021) (citing *Carrasco v. NOAMTC Inc*., 124 F. App'x 297, 304 (6th Cir. 2004) & *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 529-30 (Ohio 2002)) (internal quotations omitted).  "With regard to the second element – the 'jeopardy element' – a plaintiff must show that 'there is no other remedy available.'"  *Id.* (quoting *Day v. Nat'l Elec. Contractors Ass'n*, 82 F.Supp.3d 704, 708 (S.D. Ohio 2014)).  The clarity and jeopardy elements are questions of law to be decided by the court.  *Collins v. Rizkana*, 652 N.E.2d 653, 658 (Ohio 1995).

With respect to the clarity element, the first element, Plaintiff claimed that the clear public policy at issue in his termination was that "an Ohio employer may not[,] as a condition of continued employment[,] require an employee to suffer and not use a legal over[-]the[-]counter medication to control pain, as long as it does not create a safety hazard for the plaintiff or the

workplace." (Doc. No. 49 at PageID 474.) Plaintiff asserted this public policy is located in the ADA, Ohio's employment discrimination statutes, and the Controlled Substances Act.[5] (*Id.*)

Airgas countered that there is no evidence of an Ohio public policy – let alone a clear one – precluding employers from prohibiting the use of certain over-the-counter pain medications. (Doc. No. 46 at PageID 295-96.) Particularly relevant to the facts here is that Ohio's policy for its own employees states that "the use of hemp or hemp-derived-cannabidiol (CBD) products is not a valid reason to explain a positive drug test for THC." Ohio Department of Administrative Services, *Drug Free Workplace Frequently Asked Questions*. The state explains that this policy is in place even though Ohio recently legalized the growth and sale of hemp and hemp-derived products. *Id.* Plaintiff's opposition brief does not rebut the argument that these policies doom his wrongful termination claim. (*See* Doc. No. 49 at PageID 472-75.) The Court, therefore, concludes that Ohio does not have a *clear* public policy prohibiting employers from terminating employees because of their use of a legal, over-the-counter product – such as hemp – to control pain.

Plaintiff's claim additionally fails because of the jeopardy element. In response to Airgas' argument that Ohio's disability discrimination statute and the ADA provide an adequate remedy, Plaintiff posited that these statutes were inadequate because employees must prove that they are disabled or are in another legally protected class to receive any protection. (Doc. No. 49 at PageID 475.) But Airgas did not dispute that Plaintiff's cancer qualifies him as disabled under federal and Ohio law. (Doc. No. 53 at PageID 785 ("It is undisputed that Plaintiff is disabled.").) Moreover, the Sixth Circuit and a court in this District have explicitly rejected non-statutorily

---

[5] Plaintiff did not present anything establishing his termination jeopardized a policy imbedded in the Controlled Substances Act.

disabled persons from bringing wrongful termination claims under a disability discrimination theory. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 939-40 (6th Cir. 2000); *Gardull v. Perstorp Polyols, Inc.*, 382 F.Supp.2d 960, 967 (N.D. Ohio 2005).  Thus, Plaintiff cannot establish that "dismissing employees under circumstances like those involved in [his] dismissal would jeopardize" any public policy. *Hiller*, 2021 WL 3725657, at *3.

Accordingly, Airgas' motion is granted as it relates to Plaintiff's wrongful termination claim.

### E.  Failure to Warn and Correct

Plaintiff's last claim is premised on Airgas' alleged breach of its duty to familiarize itself with Ohio law and warn Plaintiff – a statutorily disabled person – of its use of HireRight's inaccurate drug tests before requiring Plaintiff to submit to one.  (Doc. No. 29-1 at PageID 161.) It is also premised on Airgas allegedly violating its "duty to correct its mistake in deciding to terminate the Plaintiff's employment while knowing it could not legitimately rely on a false positive drug screen result[]."  (*Id.*)  This claim is not viable and, even if it was, Plaintiff has not provided any record evidence to support it.

The Court agrees with Airgas that, despite having ample opportunity to respond to Airgas' motion to dismiss[6] and summary judgment motion, Plaintiff has not cited a single case or legal authority establishing this claim is potentially viable.  (Doc. No. 46 at PageID 300.)  The closest Plaintiff comes to citing any authority is making conclusory statements that Ohio's

---

[6] The Court has not yet ruled on Plaintiff's motion to dismiss Count IV of the amended complaint.  (Doc. No. 37.)  In their summary judgment briefs, both parties incorporated arguments related to the legal viability of this claim stated in their motion to dismiss briefs. Therefore, in determining whether to grant summary judgment, the Court also considers the arguments of law advanced in the motion to dismiss briefs.  But it does not incorporate any arguments related to the sufficiency of Plaintiff's factual allegations in ruling on this motion.

employment discrimination statutes establish that Airgas owed him a duty to warn about the accuracy of his drug test before and after he was subjected to them.  (*See* Doc. No. 40 at PageID 249-54.)  But the Court does not find that Ohio's employment discrimination statutes allow for implied causes of action.  Nor are federal courts in the business of inventing novel state law claims.  *Crihfield v. Monsanto Co.*, 844 F.Supp. 371, 378 (S.D. Ohio 1994) (holding there is no independent failure to warn cause of action when employer allegedly failed to warn employee of other employee's prior history of sexual workplace misconduct).

Even if the Court entertains the possibility that this claim is viable, the claim should still be dismissed because the record does not establish that Airgas ever *knew* HireRight's drug tests were inaccurate before or after Plaintiff was tested.  This Court has already found that the record undisputedly shows that Airgas reasonably chose to believe that HireRight's test results were accurate.  (*E.g.*, Doc. No. 46-1 at PageID 306.)  With this evidence, a jury could not reasonably conclude that Airgas knew Plaintiff's drug test produced a false result.  (*See id.*)  Plaintiff's novel cause of action fails on its own terms.

Accordingly, Airgas' motion for summary judgment is granted as it relates to Plaintiff's duty to warn claim.  Airgas' motion to dismiss this claim under Fed. R. Civ. P. 12(b)(6) is thus denied as moot.  (Doc. No. 37.)

### III. **Motion to Strike**

Plaintiff also moved to strike Dr. Simo's affidavit.  (Doc. No. 48.)  Plaintiff largely challenged Dr. Simo's conclusion that his positive marijuana tests could not have been caused by hemp.  Plaintiff argued that to have this Court consider such a conclusion, Airgas was required to notice Dr. Simo as an expert witness in this case.  For its part, Airgas argued that Dr. Simo is not an expert.  (Doc. No. 51 at PageID 769.)

If the Court were required to find that Plaintiff used marijuana, then Plaintiff's argument would be well-taken.  But here, the Court is only required to determine whether there is a triable issue on Airgas' honest belief that Plaintiff used marijuana.  Dr. Simo's affidavit can be considered to corroborate two undisputed facts relevant to this dispute: (a) HireRight's Chief Medical Officer reviewed Plaintiff's tests, and (b) the test results stated that Plaintiff's specimen was positive for marijuana.  Plaintiff's motion is denied.  (Doc. No. 48.)

## IV. <u>Conclusion</u>

For the reasons stated above, Airgas' motion for summary judgment (Doc. No. 46) is GRANTED, Airgas' partial motion to dismiss (Doc. No. 37) is DENIED as moot, and Plaintiff's motion to strike (Doc. No. 48) is DENIED.  This case is dismissed.

**IT IS SO ORDERED.**

_____
BRIDGET MEEHAN BRENNAN
**Date**: March 2, 2023                     UNITED STATES DISTRICT JUDGE